USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/19/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

:

MILAGROS QUINTANA,                                          :

:

Plaintiff,                         :        **OPINION AND ORDER**

:

-against-                          :        1:18-cv-00561 (KHP)

:

NANCY A. BERRYHILL,                                         :

*ACTING COMMISSIONER OF SOCIAL SECURITY*,    :

:

Defendant.                         :

:

-------------------------------------------------------------X

**KATHARINE H. PARKER, United States Magistrate Judge**.

Milagros Quintana ("Plaintiff"), who is represented by counsel, commenced this action

against Defendant Commissioner of the Social Security Administration (the "Commissioner")

pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff seeks review of the

Commissioner's decision that she was not disabled under Section 1614(a)(3)(A) of the Act from

November 19, 2013, the date Plaintiff applied for Supplemental Security Income benefits

("SSI"), through the date of the Commissioner's decision.

The parties submitted a joint stipulation in lieu of cross-motions for judgment on the

pleadings (the "Joint Stipulation" or "JS," Dkt. No. 13) pursuant to this Court's Order. (Dkt. No.

10.) Although Plaintiff presented evidence of various physical and mental impairments to the

Commissioner, her appeal to this Court focuses on the ALJ's findings relating to her spine-

related conditions and the limitations caused by them. (JS 2, 18 n.5.) In the Joint Stipulation,

the parties agreed that the three issues before this Court are: (1) whether the Administrative

Law Judge ("ALJ") properly weighed the medical opinion evidence when denying Plaintiff

benefits; (2) whether the ALJ properly evaluated Plaintiff's testimony; and (3) whether the Appeals Council failed to properly consider new evidence.  (JS 18.)

For the reasons set forth below, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

### I.  *Summary of Claim and Procedural History*

Plaintiff Quintana is 51 years old and lives with her adult daughter and stepson in an elevator apartment in the Bronx.  (JS 3; Administrative Record ("Tr.") 81-84.)  She completed the tenth grade and worked in childcare and retail until around 2004.  (JS 3; Tr. 89, 288-89.)  Plaintiff testified that she typically spends the day sitting on her sofa and enjoys listening to music and watching television.  (JS 3; Tr. 87-88, 95, 301.)  She occasionally socializes with friends, attends church twice a month, cooks twice a week, and goes food shopping once or twice a month.  (JS 3; Tr. 87, 299, 301-302, 751, 1640.)

Plaintiff alleges that she began experiencing back pain in 2004 after a shopping cart hit her back.  (JS 4; Tr. 1639.)  She regularly sees a pain management doctor and receives lumbar facet injection treatments to relieve the pain.  (JS 4; Tr. 307, 579, 592.)  The injections help to relieve Plaintiff's back pain for approximately three weeks.  (Tr. 307.)  Plaintiff Quintana testified that she uses a cane or walker when she walks and can only walk, stand, and sit for short periods of time.  (JS 4, 16; Tr. 84, 87, 100, 302-303.)  She produced no prescription for these assistive devices.  (Tr. 3585.)  She testified that she has limited mobility and needs help putting on her socks and shoes, getting into the shower, and doing her own hair.   (JS 3; Tr. 84, 297.)

Though not currently seeking mental health treatment, Plaintiff reports that she experiences depression and anxiety and avoids crowded public places because she is afraid that someone will hurt or "attack" her.  (Tr. 98.)   The Court assumes knowledge of and does not repeat all the facts concerning Plaintiff's medical conditions and treatment here.  (*See generally* JS and Tr.)

Plaintiff retained counsel and protectively filed an application for SSI on December 30, 2013, claiming that she was unable to perform any kind of substantial work due to impairments arising from a lumbar spine impairment, herniated discs,[1] pinched nerves in her neck and back, severe back pain, osteoarthritis,[2] asthma, acid reflux, enlarged lymph nodes,[3] hyperlipidemia,[4]

---

[1]Herniated discs can cause pain by compressing the spinal cord or spinal nerves.  *Spinal Cord Compression*, MERCK MANUALS,  https://www.merckmanuals.com/home/quick-facts-brain,-spinal-cord,-and-nerve-disorders/spinal-cord-disorders/spinal-cord-compression (last visited Mar. 18, 2019); *Low Back Pain*, MERCK MANUALS, https://www.merckmanuals.com/home/quick-facts-bone,-joint,-and-muscle-disorders/neck-and-low-back-pain/low-back-pain (last visited Mar. 18, 2019).  Symptoms typically include pain, muscle weakness or paralysis, and loss of sensation.  *Spinal Cord Compression*, MERCK MANUAL, https://www.merckmanuals.com/home/quick-facts-brain,-spinal-cord,-and-nerve-disorders/spinal-cord-disorders/spinal-cord-compression (last visited Mar. 18, 2019). Treatment options include medication and surgery.  *Id.*

[2]"Osteoarthritis is a chronic disorder associated with damage to the cartilage and surrounding tissues and characterized by pain, stiffness, and loss of function."   *Osteoarthritis (OA)*, MERCK MANUALS, https://www.merckmanuals.com/home/bone,-joint,-and-muscle-disorders/joint-disorders/osteoarthritis-oa  (last visited Mar. 18, 2019).  "Treatment includes exercises and other physical measures, drugs that reduce pain and improve function, and, for very severe changes, joint replacement or other surgery."  *Id.*

[3]Lymph nodes may become enlarged due to infection and, in rare cases, cancer.  *Swollen Lymph Nodes*, MERCK MANUALS,  https://www.merckmanuals.com/home/heart-and-blood-vessel-disorders/lymphatic-disorders/swollen-lymph-nodes (last visited Mar. 18, 2019).  Although not all cases of enlarged lymph nodes are serious, medical evaluation is recommended if the lymph nodes cause pain, are an inch or more in diameter, are draining pus or feel hard to the touch.  *Id.*

[4]Hyperlipidemia refers to high levels of fats in blood, such as cholesterol and triglycerides. *Hyperlipidemia (High Levels of Fats in the Blood, Such as Cholesterol and Triglycerides)*, STANFORD HEALTH CARE https://stanfordhealthcare.org/medical-conditions/blood-heart-circulation/vascular-disease/treatments/hyperlipidemia.html (last visited Mar. 18, 2019).

and dysthymic disorder.[5]  (JS 3; Tr. 250-264, 287.)  The Social Security Administration denied Plaintiff's initial application on March 5, 2014.  (Tr. 138-48.)

Plaintiff requested and was granted a hearing before an administrative law judge ("ALJ").  (*Id*. at 150-55.)  On May 10, 2016, ALJ Jack Russak presided over a hearing, which Plaintiff attended with her attorney.  (*See id*. at 75-121.)  Jackie Wilson, a vocational expert, also testified telephonically at the hearing about the types of jobs Plaintiff would be able to perform with her existing impairments.  (*Id*. at 108-13, 117-20.)  The ALJ issued a decision on June 17, 2016, finding that Plaintiff was not disabled from December 30, 2013 through June 17, 2016.  (*Id*. at 28-39.)

Plaintiff appealed the ALJ's unfavorable decision to the Appeals Council on June 17, 2016, and that request was denied on November 21, 2017.  (*Id*. at 1-7.)  Plaintiff submitted the following additional documents with her appeal: opinions from Dr. Joseph DeFeo, dated November 30, 2016 and March 16, 2017, concerning Plaintiff's back pain (*id*. 66-68, 70-74); receipts from Kramer's Farmacia, dated March 21, 2017 and May 9, 2017, for Gabapentin[6] (*id*. at 55); lower endoscopy results from a colorectal screening conducted at St. Barnabas Hospital to detect lesions and polyps, dated June 7, 2017 (*id*. at 57-58); pre-operative instructions for a gallbladder removal procedure from St. Barnabas Hospital, dated July 10, 2017 (*id*. at 59);

---

[5]This condition is also known as "persistent depressive disorder."  *Depressive Disorders*, MERCK MANUALS, https://www.merckmanuals.com/professional/psychiatric-disorders/mood-disorders/depressive-disorders#v1028061 (last visited Mar. 18, 2019).  Symptoms typically include: poor appetite or overeating; insomnia or hypersomnia; low energy or fatigue; low self-esteem; poor concentration or difficulty making decision; and feelings of hopelessness.  *Id.*

[6]Gabapentin is an anticonvulsant that can also be used to treat pain.  *Treatment of Pain*, MERCK MANUALS, https://www.merckmanuals.com/professional/neurologic-disorders/pain/treatment-of-pain (last visited Mar. 18, 2019).

records from Third Avenue Open MRI discussing an examination of Plaintiff's liver and kidneys, dated April 5, 2017 (*id*. at 61); and an MRI of Plaintiff's lumbar spine completed at Stand-Up MRI of the Bronx, P.C. on September 22, 2016. (*Id*. at 63-64.) The Appeals Council did not consider this additional medical evidence because the tests and treatments referred to in those documents post-dated the time period between December 2013 through June of 2016 (the relevant period considered by the ALJ) and were, thus, deemed not relevant to determining whether Plaintiff was disabled on the date the ALJ issued his decision. (*Id*. at 2.) Accordingly, the Appeals Council upheld ALJ Russak's decision. (*Id.*)

## II.    The Commissioner's Decision

ALJ Russak denied Plaintiff benefits pursuant to the five-step sequential process contemplated in the governing regulations. 20 C.F.R. § 416.920 (a)(4)(i)-(v). At step one, he found that Plaintiff had not engaged in substantial gainful activity since December 30, 2013, the application date. (*Id*. at 30.) At step two, he concluded that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar and cervical spine, asthma, anxiety disorder, and depressive disorder. (*Id.*)

At step three, the ALJ determined that Plaintiff's impairments, considered both individually and collectively, failed to meet or medically equal the severity of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). (*Id*. at 30-31.)

When evaluating Plaintiff's degree of limitation arising from her physical impairments, the ALJ determined the following:

- Plaintiff did not suffer from dysfunction of her joints, pursuant to Listing 1.02, because there is no consistent evidence in the record showing that she "lost the ability to ambulate

5

effectively." (*Id*. at 31.) The record also shows that Plaintiff exhibited a "normal gait" in 2013, 2014, 2015, and 2016 (*id*.), and did not use a walker or cane during a consultative examination that took place in March of 2016. (*Id*. at 31, 596, 812, 1625, 1631, 1641.)

- Plaintiff failed to meet Listing 1.04, which pertains to disorders of the spine, because she did not show consistent evidence of motor, sensory or reflex loss. Her treatment records showed that she does not suffer from neurological deficits, frequently exhibited a negative straight leg raise,[7] and maintained the ability to ambulate effectively. (*Id*. at 31, 596, 602, 605, 607, 611, 617, 623, 631, 651, 754-58, 812, 840-41, 1625-26, 1631-62, 1641.)

- Listings 3.02, pertaining to chronic respiratory disorders not caused by cystic fibrosis, and 3.03, pertaining to asthma, were not met because the record did not reflect "FEVI or FVC[8] values meeting those set forth in the listings" and did not show "any evidence of chronic asthmatic bronchitis, chronic impairments of gas exchange, or asthma attacks occurring with the frequency shown in the listings."

(*Id*.) Accordingly, the ALJ concluded that Plaintiff's physical impairments did not meet the criteria established in the Listings.

When evaluating Plaintiff's degree of limitation resulting from her mental impairments, the ALJ looked to Sections 12.04 and 12.06 of the Listings, which address affective disorders.

---

[7] "The [Straight Leg Raise] test is used in routine neurological evaluations to test for low back pain or radiculopathy, and a positive result in the presence of a compressive lesion . . . may lead to surgery." Olukemi K. Fajolu, MD et al., *A Prospective Analysis of the Supine and Sitting Straight-Leg Raise Test and Its Performance in Litigation Patients*, 12 Int'l J. Spine Surgery 58 (Jan. 2018), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6162033/.

[8] FEVC and FEV1 values are used in spirometry, a method used to measure how well an individual can move air into and out of their lungs. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 3.00(E). The test involves at least three forced expiratory maneuvers that includes a maximum inhalation and maximum exhalation. *Id.* The first second of forced expiration is the FEV1 value. The total volume of air exhaled during the entire maneuver is the FVC. *Id.* Depending on the Listing being analyzed, either the highest FEV1 or FEV is used to determine whether an individual suffers from a respiratory disorder. *Id.*

Pursuant to these Sections, a claimant has an affective disorder if she meets the criteria for both Subparts A and B[9] or when she meets the criteria for Subpart C[10] in the Listings.[11]  The ALJ found that Plaintiff only experienced the following limitations under subpart B:

- Mild limitations with respect to daily living because, although she needs some help from her children to get dressed and do her hair, she is able to do some cooking, some cleaning, some shopping, and socializes with friends (*id*. at 31, 297, 751, 755, 1640);

- Mild limitations in social functioning because she has no reported limitations apart from having problems getting along with some family members (*id*. at 31, 302, 304, 307, 751); and

- Moderate difficulties with respect to concentration, persistence or pace, because she has some difficulty performing simple calculations, but is able to concentrate and maintain a regular schedule and suffers from no memory impairments.

(*Id*. at 32, 305, 750, 945, 1641.)  Based on these determinations, ALJ Russak concluded that Plaintiff's mental impairments did not satisfy the criteria of subpart B because she did not have

---

[9] To meet the requirements of Subpart B, an individual must experience marked limitations in at least two of the following areas of mental functioning: (1) activities of daily living; (2) maintaining social functioning; (3) maintaining concentration, persistence, or pace; and (4) repeated episodes of decompensation, each of extended duration.

[10] Under 12.04, a claimant will meet the requirements of Subpart C if she has a "[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support" and if she exhibits one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) "[a] residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate"; or a (3) current history of one or more years' inability to function outside a highly supportive living arrangement.

Under 12.06, a claimant will meet the requirements of Subpart C if she has a complete inability to function independently outside her home.

[11] Although the ALJ's decision does not address whether Plaintiff met the requirements of Subpart A (*id*. at 31), this omission had no impact on the validity of his analysis because he found that Plaintiff failed to meet the criteria of both subparts B and C.  (*Id*. at 31); *see also* Sections 12.04 and 12.06 of the Listings.

at least two "marked" limitations in those categories.  (*Id*. at 32.)  He likewise determined that

Plaintiff did not meet the elements of subpart C because she had not experienced any episodes

of decompensation, there was "no evidence that a minimal increase in mental demands or

change in environment would cause her to decompensate," and Plaintiff "has no history of ever

living within a highly supportive living arrangement, and there is no indication of any need for

such an arrangement."  (*Id*. at 32.)   Thus, the ALJ found that Plaintiff's alleged mental

impairments failed to meet the criteria set forth in the Listings.

At step four, the ALJ determined Plaintiff's residual functional capacity ("RFC"), which

refers to the most work Plaintiff can perform despite her limitations.  20 C.F.R. § 416.945(a)(1).

ALJ Russak found that Plaintiff retained the requisite RFC to perform sedentary work as defined

in 20 C.F.R. § 416.967(a)[12] with the following additional limitations:

- Plaintiff is limited to working a low-stress job[13] and performing simple and routine tasks, with only occasional judgment required, and should be permitted to be off-task 5% of the day in addition to regularly scheduled breaks;

- She must be allowed to sit or stand alternatively at will, provided she is not off task more than 5% of the work period;

- Plaintiff is limited to performing jobs that can be performed with a handheld assistive device at all times when standing;

- Plaintiff can occasionally climb ramps or stairs, but never ladders, ropes or scaffolds, and she can occasionally stoop, crouch or kneel, but never crawl;

---

[12] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." § 416.967(a).

[13] Defined as having only occasional decision-making and occasional changes in the work setting.  (Tr. 33.)

- She can perform occasional movement of her neck from side to side or up and down, and can frequently reach, overhand reach, and handle, finger or feel; and

- Plaintiff should have no exposure to moving machinery, unprotected heights or driving vehicles, and no concentrated exposure to extreme heat or cold, wetness or humidity, irritants such as fumes, odors, dusts, gases, poorly ventilated areas, and chemicals.

(*Id*. at 32-33.)  In determining Plaintiff's physical functioning, ALJ Russak reasoned that her symptoms "have been treated conservatively [with lumbar facet injections] and appear to be manageable overall."  (*Id*. at 34.)  He also found that Plaintiff, with a few exceptions, consistently exhibited a "normal gait, negative straight leg raise, and normal neurological findings."  (*Id*.)  Although two consultative examiners observed that Plaintiff exhibited an antalgic gait, inability to heel-toe walk, a reduced range of motion, a bilaterally positive straight leg raise, and reduced motor strength in her lower left leg, ALJ Russak noted that all other neurological findings made during those examinations were normal and Plaintiff did not use a cane or walker when she attended those appointments.  (*Id*. at 34-35; *see also id*. at 754-58, 1639-42.)  The ALJ also relied on the observations of evaluating surgeon, Dr. John Olsewski, who found that Plaintiff was not a good candidate for back surgery because she exhibited "fully 5 out of 5 Waddell's incongruency signs"[14] when he examined her to evaluate the severity of her back pain.  (*Id*. at 34-35; *see also id*. at 1647-48.)

---

[14] Waddell's signs were developed "to identify patients with low back pain who were likely to experience a poor surgical outcome from lower back surgery." Ryan S. D'Souza & Luke Law, *Waddell Sign*, STATPEARLS, *available at* https://www.ncbi.nlm.nih.gov/books/NBK519492/ (last updated Feb. 19, 2019).  Waddell's signs can be used to "identify malingering in patients . . . as well as identifying psychogenic components in other non-lumbar pain syndromes."  *Id.*

With respect to Plaintiff's asthma, the ALJ found that the "record shows no hospitalization, intubations, or other emergent treatment for severe asthma attacks."  (*Id*. at 35.)  He also noted that during a medical visit in July of 2015, Plaintiff reported feeling some tightness from asthma, but declined in-office treatment and reported feeling better and doing an increased amount of walking.  (*Id*.; *see also id*. at 702, 1491.)  Thus, the ALJ found that Plaintiff's asthma is adequately controlled with medication and would not impose further limitations than those provided in his RFC assessment.  (*Id*. at 35.)

With respect to Plaintiff's mental impairments, the ALJ relied on records from Dr. Sarah Nosal stating that, as of July of 2013, Plaintiff was not seeking psychiatric treatment and reported "doing a lot better."  (*Id*. at 35; *see also id*. at 716.)  ALJ Russak also looked to records from the February 2014 consultative examination conducted by Dr. David Mahony stating that, although Plaintiff appeared to have a depressive disorder, an anxiety disorder and some cognitive limitations relating to attention and concentration, her symptoms lacked the requisite severity to interfere with her daily functioning.  (*Id*. at 35; *see also id*. at 749-52.)   The ALJ also relied on a depression and anxiety screening conducted in July of 2015 indicating that Plaintiff's scores fell in the mid-range and that she denied feeling tired or having little energy, feeling bad about herself or having trouble concentrating.  (*Id*. at 35; *see also id*. at 945-46.)

ALJ Russak considered Plaintiff's statements regarding her purported physical and psychological impairments according to the factors set forth in 20 C.F.R. § 416.929(c)(3).[15]  (*Id*. at 36.)  He noted that although Plaintiff claimed to have very limited functioning in her function

---

[15] When evaluating the intensity and persistence of a claimant's symptoms, the Commissioner will consider other evidence in addition to evidence from medical and non-medical sources, medical opinions, and objective medical evidence. § 416.929(c)(3).

report, she acknowledged that she socializes with friends, is capable of doing light cooking, light cleaning, occasional shopping, and reported feeling better and increasing her walking in July of 2015. (*Id*. at 36; *see also, e.g.*, *id*. 751, 755, 1491, 1640.) The ALJ concluded that the evidence in the record, considered together, suggested that Plaintiff is less limited in her functioning than alleged. (*Id*. at 36-37.)

At step five of his analysis, the ALJ considered Plaintiff's age, education, and RFC and, after consulting with the vocational expert, found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id*. at 37-38.) Thus, the ALJ held that Plaintiff was not disabled from December 30, 2013 through June 17, 2016, the date of his decision. (*Id*. at 38-39.)

## DISCUSSION

### I. *Applicable Law*

#### A. *Judicial Standard of Review of the Commissioner's Decision*

A court's review of an appeal of a denial of disability benefits is limited to two inquiries. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). First, the court must determine whether the Commissioner applied the correct legal principles in reaching a decision. 42 U.S.C. § 405(g); *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Second, the court must decide whether the Commissioner's decision is supported by substantial evidence in the record. *Id.* If the Commissioner's decision is supported by substantial evidence in the administrative record, the ALJ's findings as to any facts are conclusive. § 405(g); *see also* 42 U.S.C. § 1383(c).

An ALJ's failure to apply the correct legal standard constitutes reversible error if that failure may have affected the disposition of the case. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d

Cir. 2008).  This applies to an ALJ's failure to follow an applicable statutory provision, regulation, or Social Security Ruling ("SSR").  *See, e.g.*, *id.* (regulation); *Schaal v. Callahan*, 993 F. Supp. 85, 93 (D. Conn. 1997) (SSR).  In such a case, the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), especially if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *E.g.*, *Crysler v. Astrue*, 563 F. Supp. 2d 418, 429 (N.D.N.Y 2008).

    If the reviewing court is satisfied that the ALJ applied the correct legal standards, then the reviewing court must "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision. . . ."  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam) (internal quotation marks omitted).  Under the substantial evidence standard, a reviewing court may reject an ALJ's findings of fact "only if a reasonable factfinder would have to conclude otherwise."  *Id*. at 448 (internal quotation marks and emphasis omitted).

    To be supported by substantial evidence, the ALJ's decision must be based on a consideration of all the evidence available in the claimant's case record.  42 U.S.C. § 1383(c).  While the ALJ's decision need not "mention[] every item of testimony presented," *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (per curiam), or "reconcile explicitly every conflicting shred of medical testimony," *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (internal quotation marks omitted), the ALJ may not ignore or mischaracterize evidence of a person's alleged disability.  *See Ericksson v. Comm'r of Soc. Sec*., 557 F.3d 79, 82–84 (2d Cir. 2009) (mischaracterizing evidence); *Kohler*, 546 F.3d at 268–69 (overlooking and

mischaracterizing evidence); *Ruiz v. Barnhart*, No. 01-cv-1120 (DC), 2002 WL 826812, at *6 (S.D.N.Y. May 1, 2002) (ignoring evidence); *see also Zabala*, 595 F.3d at 409 (reconsideration of improperly excluded treating physician evidence typically requires remand).  If the decision denying benefits applied the correct legal standards and is based on substantial evidence, the reviewing court must affirm; otherwise, the court may modify or reverse the decision, with or without remand.  § 405(g); § 1383(c)(3).

### B.   Legal Principles Applicable to the Commissioner's Disability Determination

Under the Social Security Act, every individual considered to have a "disability" is entitled to benefits.  § 1382; § 423.  The Act defines "disability" as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  § 1382c(a)(3)(A); § 423(d)(1)(A). A claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." § 1382c(a)(3)(B); § 423(d)(2)(A).

To determine whether an individual is entitled to receive disability benefits, the Commissioner is required to conduct the following five-step inquiry:

> (1) Whether the claimant is currently engaged in any substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(i).

> (2) If not gainfully employed, determine whether the claimant has a "severe impairment" that significantly limits his or her ability to perform basic work activities. Under the applicable regulations, an impairment or combination of impairments that

13

significantly limits the claimant's ability to perform basic work activities is considered "severe." § 416.920(a)(4)(ii).

(3) If the claimant has a "severe impairment," determine whether the impairment is one of those listed in the Listings – if it is, the Commissioner will presume the claimant to be disabled and the claimant will be eligible for benefits. § 416.920(a)(4)(iii). At this stage, the Commissioner must also determine the claimant's ability to perform physical and mental work activities on a sustained basis despite her impairments.[16] This ability assessment is referred to as the claimant's RFC. § 416.920(a)(4)(iv).

(4) If the claimant does not meet the criteria set forth in the Listings, the Commissioner next must determine whether the claimant possesses the requisite RFC to perform her past work. *Id.*

(5) If the claimant is not capable of performing work she performed in the past or has no history of past work, the Commissioner must determine whether the claimant is capable of performing any work.

§ 416.920(a)(4)(v); *see also Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999);

*Gonzalez v. Apfel*, 61 F. Supp. 2d 24, 29 (S.D.N.Y. 1999).

The claimant bears the burden of proof as to the first four steps of the Commissioner's analysis. *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); *Gonzalez*, 61 F. Supp. 2d at 29. At the last step, the burden shifts to the Commissioner to show that "there is other gainful work in the national economy which the claimant could perform." *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998).

---

[16] A claimant's residual functional capacity is "the most [she] can still do despite [her] limitations." § 416.945(a)(1). The ALJ's assessment of a claimant's residual functional capacity must be based on all relevant medical and other evidence, including objective medical evidence, such as x-rays and MRIs, the opinions of treating and consultative physicians, and statements by the claimant and others concerning the claimant's impairments, symptoms, physical limitations, and difficulty performing daily activities. *See, e.g., Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

Where a claimant alleges mental impairments in connection with an application for disability benefits, the Commissioner also must assess those limitations pursuant to § 416.920a. These regulations require the application of a "special technique" at the second and third steps of the five-step framework and at each level of administrative review. § 416.920a(a); *Kohler v. Astrue*, 546 F.3d 260, 265–66 (2d Cir. 2008). Thus, the Commissioner must first determine whether:

(1) The claimant has "medically determinable mental impairment(s)." § 416.920a(b)(1).

(2) If the claimant has such an impairment, the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s)" in the following areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. § 416.920a(b)(2), (c)(3).

(3) The first three functional areas (daily living; social functioning; and concentration, persistence, or pace) are rated using a five-point scale: none, mild, moderate, marked, and extreme. The fourth functional area (episodes of decompensation) is rated using a four-point scale: none, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

§ 416.920a(c)(4). If the degree of limitation is "none" or "mild," the Commissioner will typically conclude that the claimant's impairments are not severe, unless contrary evidence indicates more than a minimal limitation to complete basic work activities. § 416.920a(d)(1). Where a claimant's mental impairment is severe, the Commissioner will determine if it meets or is equivalent in severity to a mental disorder set forth in the Listings. § 416.920a(d)(2). The Commissioner accomplishes this task by comparing medical findings regarding the claimant's mental impairments and the rating of the degree of functional limitation to the criteria of the

appropriate mental disorder.  *Id.*  Where a claimant has a mental impairment that neither meets nor is equivalent in severity to any Listing, the claimant's RFC will be assessed, in accordance with § 416.920(a)(4).

## II.  *Analysis*

This Court first addresses whether the ALJ followed correct legal standards with respect to development of the record, the weight he afforded to opinions from Plaintiff's treating physicians, Drs. Gopal and Nosal, and the factors he considered in assessing Plaintiff's statements regarding the severity of her physical limitations.  This Court will then address the extent to which it was legally appropriate for the Appeals Council to reject the new evidence Plaintiff submitted to the Commissioner when appealing the ALJ's rejection of her claim. Finally, this Court will address whether the ALJ's determination is supported by substantial evidence.

### A.  *Development of the Record*

In Social Security proceedings, the ALJ must affirmatively develop the record on behalf of all claimants.  *See Moran v. Astrue*, 569 F.3d 108, 112–13 (2d Cir. 2009).  This means that the ALJ must investigate the facts and develop the arguments both for and against granting benefits.  *Id.*  Whether the ALJ has met this duty to develop the record is a threshold question. Accordingly, before deciding whether the Commissioner's final decision is supported by substantial evidence pursuant to 42 U.S.C. § 405(g), "the court must first be satisfied that the ALJ provided plaintiff with a full hearing under the Secretary's regulations and also fully and completely developed the administrative record."  *Scott v. Astrue,* No. 09-cv-3999 (KAM)(RLM), 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010) (internal quotation marks and citations

omitted).  The ALJ has an obligation to develop the record even where the claimant has legal counsel.  *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).  Remand is appropriate when the ALJ fails to discharge this duty.  *See, e.g.*, *Moran*, 569 F.3d at 114–15 ("We vacate not because the ALJ's decision was not supported by substantial evidence but because the ALJ should have developed a more comprehensive record before making his decision.").

"[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."  *Rosa*, 168 F.3d at 79 n.5 (citing *Perez*, 77 F.3d at 48).  Moreover, an ALJ has no obligation to re-contact a treating source simply upon determining that the physician's opinion is inconsistent with the record.  *E.g.*, *Micheli v. Astrue*, 501 F. App'x 26, 29–30 (2d Cir. 2012) (upholding denial of benefits where treating physician's assessments of plaintiff's impairments were inconsistent with the record).

Although Plaintiff does not expressly allege that the ALJ failed to fully develop the record (JS 18), this Court is nevertheless obliged to conduct its own independent assessment of whether the ALJ properly discharged this duty.  ALJ Russak provided Plaintiff with the opportunity to answer questions regarding her work and educational background and the severity of her alleged impairments at an in-person hearing on May 10, 2016.  (*See generally* Tr. 75-121.)  He also affirmatively supplemented the record by issuing subpoenas to Health One Physical Therapy (*id*. at 1941), Orange Regional Medical Center (*id*. at 1652), Dr. John Olsewski (*id*. at 1643), and Lincoln Medical Center requesting Plaintiff's medical records to help substantiate her alleged impairments.  (*Id*. at 1970.)  All told, the record totals 3,585 pages and contains, among other evidence: opinions from two of Plaintiff's treating physicians, Drs. Gopal

17

and Nosal, regarding her alleged impairments (*id*. at 588-594, 774-81, 806-11); opinions from three consultative examiners (*id*. at 749-52, 754-58, 1639-42); and hundreds of pages of notes prepared by Plaintiff's treating physicians detailing their ongoing evaluation and treatment of Plaintiff during the relevant time period. (*Id*. at 552-86, 595-747.) Accordingly, after careful review of the full record, the Court is satisfied that the ALJ provided Plaintiff with a full hearing and completely developed the administrative record.

### B. The "Treating Physician Rule"

Plaintiff argues that the ALJ violated the treating physician rule in connection with the weight afforded to Dr. Gopal's and Dr. Nopal's opinions. (JS 18-27.) She correctly notes that the applicable regulations in effect at the time she filed her claim provided that the opinions of a claimant's treating physicians are entitled to deference over those provided by consultative examiners.[17] Under the applicable regulations, so long as a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in . . . [the] record" it must be given controlling weight. 20 C.F.R. § 416.927(c)(2); *see also, e.g.*, *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (the less consistent a treating physician's opinion is with the record as a whole, the less weight it will be given). Any decision declining to give a treating physician's opinion controlling weight must provide good reasons for doing so. § 416.927(c)(2); *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993).

---

[17] The "treating physician rule" has been eliminated, but remains applicable to claims filed before March 27, 2017. *Cortese v. Comm'r of Soc. Sec.*, No. 16-cv-4217 (RJS), 2017 WL 4311133, at *3 n.2 (S.D.N.Y. Sept. 27, 2017).

The regulation sets forth several factors relevant to a decision determining how much weight to afford a treating physician's opinion including: (1) the length of the treatment relationship between the physician and the claimant and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical support for the treating physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) the physician's degree of specialization; and (6) other factors that tend to support or contradict the treating physician's opinion. § 416.927(c); *Schisler*, 3 F.3d at 567.

With respect to the third factor, although a claimant's conservative course of treatment alone cannot justify ascribing less than controlling weight to a treating physician's opinion, *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008), an ALJ may compare a claimant's level of care with a treating physician's opinion to determine whether the opinion is consistent with substantial evidence in the record and is, thus, entitled to controlling weight. *See, e.g.*, *Botta v. Colvin*, 669 F. App'x 583, 584 (2d Cir. 2016) (rejecting claimant's argument that the ALJ failed to assign sufficient weight to her treating physician's opinion where the relatively conservative treatment of her physical impairments was inconsistent with the treating physician's opinion that claimant was almost completely immobile).

When determining the weight that should be assigned to a treating physician's opinion, the ALJ may also consider: the opinions of other medical experts that conflict with those of the claimant's treating physician; a lack of objective medical evidence supporting the treating physician's opinion; and evidence from the claimant herself that undermines her treating physician's opinion about her limitations. *Halloran*, 362 F.3d at 32 (citations omitted); *see also Rivera v. Comm'r of Soc. Sec.*, 728 F. Supp. 2d 297, 327 (S.D.N.Y. 2010) ("ALJ validly rejected . . .

19

[treating] physicians' opinions because they conflicted with plaintiff's admitted daily activities and other evidence in the record. . . ."); *see also* § 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings . . . [and] [t]he better an explanation a source provides for an opinion, the more weight we will give that opinion.").

Finally, when discussing the good reasons for not giving controlling weight to a treating physician's opinion, an ALJ is not required to explicitly go through each of the above factors in his decision, but his rational and adherence to the regulation must be clear. *McDonagh v. Acting Comm'r of Soc. Sec.*, No. 1:16-cv-08698 (VSB)(KHP), 2017 WL 9286987, at *15 (S.D.N.Y. Nov. 27, 2017), *report and recommendation adopted,* No. 16-cv-8698 (VSB)(KHP), 2018 WL 2089340 (S.D.N.Y. May 2, 2018) (citing *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)) (ALJ did not commit reversible error by ascribing less weight to the opinion of claimant's treating physicians where their opinions were inconsistent with the opinions of other examiners and the objective clinical evidence); *see also, e.g.*, *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (an ALJ need not "slavish[ly] recit[e] . . . each and every factor where the ALJ's reasoning and adherence to the regulation are clear.").

ALJ Russak assigned "little weight" to the opinion of Plaintiff's pain management physician, Dr. Sireen Gopal, and her primary care physician, Dr. Sarah Nosal. (Tr. 36-37.) In rationalizing this decision, ALJ Russak explained that their opinions:

> [A]re quite inconsistent with other substantial medical evidence of record, including the lack of any consistent neurological deficits shown in the records, with the noting of incongruency signs and finding the claimant to be a poor surgical candidate by surgeon

John Olsweski [sic] M.D., and with the claimant's own daily activities as reported to the consultative examiners.

(*Id.* at 36*.*)  After a careful review of the record, the Court finds that ALJ Russak adequately explained his rationale, complied with the requirements of § 416.927(c), and correctly applied the treating physician rule when he decided to attribute little weight to Dr. Gopal's and Dr. Nosal's opinions.  (*Id.* at 36-37.)

### i. Weight of Dr. Gopal's Opinions

Dr. Gopal prepared two fill-in-the-blank impairment questionnaires,[18] one dated December 23, 2013 (*Id.* at 588-94) and another dated November 11, 2014 (*id.* at 806-811), to opine that Plaintiff is severely restricted in her ability to sit, stand, reach and carry and lift items.  In analyzing Dr. Gopal's opinion, the ALJ acknowledged that Dr. Gopal is a pain management physician who has been treating Plaintiff since at least 2011 by, among other things, regularly administering lumbar facet injections.  (*See id.* at 31, 34, 36-37; *see also, e.g.*, *id.* at 588-94.)  He then analyzed whether Dr. Gopal's opinion was supported by medical evidence and the record as a whole.  (*Id.* at 36-37; *see also, id.* at 751, 755, 1491, 1640, 1647-48); *see generally*, *Micheli*, 501 F. App'x at 28-29 (ALJ correctly declined to assign controlling weight to treating physician's opinion where substantial evidence showed "essentially normal neurological function as evidenced by full or nearly full motor strength, symmetrical reflexes,

---

[18] Although this issue was not raised by the Commissioner, the Court notes that, in this Circuit, fill-in-the-blank questionnaires are considered be of "limited evidentiary value," even if they were prepared by a treating physician. *Scitney v. Colvin*, 41 F. Supp. 3d 289, 301–302 (W.D.N.Y. 2014) (citations omitted) (holding, among other things, that standardized forms submitted by plaintiff's treating physicians claiming that she was severely impaired were entitled to little weight in light of contravening medical evidence in the record); *see also Halloran*, 362 F.3d at 31 n.2 ("The standardized form . . . is only marginally useful for purposes of creating a meaningful and reviewable factual record.").

and intact sensation."); *Wilferth v. Colvin*, 49 F. Supp. 3d 359, 362–63 (W.D.N.Y. 2014) (ALJ correctly ascribed "little weight" to treating physician's opinion that claimant was completely disabled where that opinion was contradicted by the opinions of multiple consultative medical sources who opined that claimant was capable of performing sedentary work).

In determining that Dr. Gopal's opinion was not supported by the record as a whole, ALJ Russak considered the record and the fact that Dr. Gopal "noted a normal gait during numerous visits in 2013, 2014, 2015 and as recently as February 2016" and found that Plaintiff can ambulate effectively. (*Id*. at 31, *see also id*. at 809, 1625.) The ALJ also observed that Plaintiff did not use an assistive device when she saw the neurological consultative examiner on March 23, 2016 (*id*. at 31, 1641) and that her symptoms can be controlled with medication. (*Id*. at 31, 33, 35-36; *see also, e.g.*, *id*. at 1491.) ALJ Russak also relied on the opinion of Dr. John Olsewski, an orthopedic surgeon who examined Plaintiff and concluded that Plaintiff is not a good candidate for back surgery because she exhibited "fully 5 out of 5 Waddell's incongruency signs." (*Id*. at 34, 36-37; *see also id*. at 1647.) The ALJ further noted that, notwithstanding Dr. Gopal's opinion that Plaintiff is unable to sit or stand for more than an hour out of an eight-hour day and can only occasionally lift up to 10 pounds (*id*. at 591), he prescribed only a conservative level of care consisting of lumbar facet injections every few months and prescriptions for non-narcotic medication.[19] (*Id*. at 37; *see also, e.g.*, *id*. at 808.)

---

[19] Plaintiff has had prescriptions for muscle relaxants, such as Flexeril, cyclobenzaprine, and Robaxin, and medication to treat her pain, such as Lyrica, Celebrex, and gabapentin. (*Id*. at 465, 471, 512, 592.) Dr. Gopal also temporarily prescribed Plaintiff Norco, a narcotic medication used to treat moderate to severe pain, in or around December of 2012, but stopped prescribing the medication since that time. (*Id*. at 471, 474-75, 512-13, 607, 808.)

Plaintiff argues that the ALJ improperly considered her level of care when he declined to afford Dr. Gopal's opinions controlling weight. (JS at 40.) This argument is unavailing. It is well established that an ALJ may compare a claimant's level of care with a treating physician's opinion to determine whether the severity of the claimant's reported impairments is consistent with substantial evidence in the record. *See, e.g.*, *Botta*, 669 F. App'x at 584. Here, ALJ Russak's consideration of Plaintiff's conservative level of care was particularly appropriate in light of Dr. Gopal's opinion that Plaintiff could not walk or stand for more than one hour, which is suggestive of a need for more aggressive pain management treatment. (Tr. 36-37, 591, 808.)

Plaintiff also argues that ALJ Russak improperly relied on the opinions of consultative examiners, Dr. Sharon Revan and Dr. Mohammed Zaman, who found that Plaintiff suffers from "mild" to "moderate" limitations due to her spinal impairments (*id*. at 757, 1642) when assigning Dr. Gopal's opinion minimal weight. (JS 24-26, 36-37.) Specifically, Plaintiff contends that ALJs are constrained from using opinions obtained from consultative sources to refute the opinion of a treating physician where the consultative sources did not review the claimant's medical history and background. (*Id.*)

This argument is also unpersuasive. Although Plaintiff is correct that the court in *Burgess v. Astrue*, 537 F.3d 117, 132 (2d Cir. 2008), held that the opinions of consultative examiners who failed to review critical medical documents, alone, could not be used to rebut a treating physician's opinion, the holding in *Burgess* is inapplicable in this case because ALJ Russak did not rely on Dr. Revan's and Dr. Zaman's medical source statements to rebut Dr. Gopal's opinions. (Tr. 36-37.) Instead, the ALJ relied on the portion of Dr. Revan's and Dr. Zaman's reports that described Plaintiff's self-reported daily activities. (*Id*.; *see also id*. at 755,

1640.)  Plaintiff's self-reported activities to these doctors is factual evidence of the type that an

ALJ may consider when determining the appropriate weight to give a treating physician's

opinion.  *See, e.g.*, *Mayor v. Colvin*, No. 15-cv-0344 (AJP), 2015 WL 9166119, at *18 n.24

(S.D.N.Y. Dec. 17, 2015) (where a consultative examiner had not reviewed claimant's medical

records, it was nonetheless appropriate for the ALJ to use the portion of his report discussing

claimant's self-reported daily living activities to rebut the treating physician's report).  Thus, ALJ

Russak did not err when he weighed factual evidence gleaned from the consultative physicians'

reports against Dr. Gopal's opinions regarding the severity of Plaintiff's physical impairments

and decided to assign Dr. Gopal's opinion little weight.

### ii.  *Weight of Dr. Nosal's Opinion*

Dr. Nosal prepared a fill-in-the-blank multiple impairment questionnaire in November of

2013, in which she opined that Plaintiff suffers from chronic back pain and can only sit for four

hours and stand for one hour in an eight-hour work day.[20]  (*Id*. at 776.)  ALJ Russak

acknowledged that Dr. Nosal is one of Plaintiff's treating physicians and has treated her for

years.  (*See id*. at 34, 36-37.)  Yet, when evaluating the record as a whole, he concluded that Dr.

Nosal's opinion was inconsistent with objective evidence that Plaintiff had a normal gait, was

able to walk, and that her symptoms improved with medication.  (Tr. 31, 33, 35-36; *see also,*

*e.g.*, *id*. at 809, 1491 1625, 1641.)  The ALJ also relied on Dr. Olsewski's observation that

Plaintiff manifested significant incongruency signs to find that Dr. Nosal's opinion could not be

reconciled with substantial evidence in the record.  (*Id*. at 34, 36-37; *see also* 1647.)  In

---

[20] The Court notes that Dr. Nosal's view of the length of time Plaintiff could sit differed significantly from Dr. Gopal's view.  Compare Tr. 776 with *id*. at 808.

addition, ALJ Russak found that Dr. Nosal's opinion that Plaintiff can only sit for four hours and stand for one hour during an eight-hour work day (*id*. at 776) was inconsistent with the level of care and conservative treatment Plaintiff received.  (*Id*. at 37; *see e.g.*, *id*. at 778, 808); *see, e.g.*, *Botta*, 669 F. at 584.

To the extent Plaintiff takes issue with the ALJ taking note of the fact that some of Plaintiff's purported limitations listed in the questionnaire completed by Dr. Nosal were "per patient report," this argument does not change the analysis.  (JS 21-22; Tr. 34, 36-37; *see also id*. at 777.)  Indeed, the Second Circuit has made clear that, although a treating physician may consider a claimant's subject complaints of pain, an opinion that solely relies on those subjective complaints is not entitled to controlling weight.  *Baladi v. Halter*, No. 00-cv-3240 (JG), 2001 WL 527406, at *8 (E.D.N.Y. May 4, 2001), *aff'd sub nom. Baladi v. Barnhart*, 33 F. App'x 562 (2d Cir. 2002) (ALJ correctly declined to accord treating physician's opinion, that claimant suffered from severe impairments in his back, controlling weight where claimant's subjective complaints of back pain were the primary basis of his opinion and the medical record showed unremarkable findings.)

Plaintiff also argues that ALJ Russak improperly used the opinions of consultative examiners, Dr. Revan and Dr. Zaman, to rebut Dr. Nosal's opinion and assign it minimal weight. (JS 25, 37.)  However, as explained above, it was not improper to rely in part on factual evidence contained in the consultative physicians' reports when assigning little weight to the treating physicians' opinions.  *See, e.g.*, *Mayor*, No. 15-cv-0344 (AJP), 2015 WL 9166119, at *18 n.24.  Accordingly, the Court finds that ALJ Russak did not commit reversible error by assigning little weight to the opinion of Dr. Nosal.

### *C. The ALJ's Evaluation of Plaintiff's Statements Regarding Her Symptoms*

Plaintiff complains that the ALJ improperly rejected her testimony about her limitations and, in particular, the severity of her symptoms. However, an ALJ "'is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record.'" *Martes v. Comm'r of Soc. Sec.*, 344 F. Supp. 3d 750, 763 (S.D.N.Y. 2018) (quoting *Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015)) (finding that claimant suffered ongoing pain, but such pain did not prevent him from performing sedentary work).

There is a two-step process to determine whether a claimant is accurately describing the severity of symptoms caused by a medical condition or impairment. First, the ALJ must determine whether the claimant, in fact, suffers from an underlying medical condition or impairment. Second, the ALJ must determine whether such a condition or impairment could reasonably be expected to cause the symptoms claimed. 20 C.F.R. § 416.929; SSR 16-3P, 2016 WL 1119029 (S.S.A. Mar. 16, 2016).[21] When assessing the existence and severity of symptoms arising from the claimant's underlying medical condition or impairment, applicable regulations state that an ALJ should inquire about various factors, including: the claimant's daily activities; intensity and persistence of pain and other symptoms; the factors that aggravate the claimant's symptoms; and the treatments and medications used to alleviate the pain. § 416.929; *see also* SSR 16-3P, 2016 WL 1119029 (S.S.A. Mar. 16, 2016). An ALJ must explain a decision to reject plaintiff's testimony about her limitations "'with sufficient specificity to enable the [reviewing]

---

[21] SSR 16-3P, 2016 WL 1119029 (S.S.A. Mar. 16, 2016) was superseded by SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017), which eliminated the use of the term "credibility" and clarified that, in examining a claimant's symptoms, an ALJ is not evaluating the claimant's character.

Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence.'" *Bracken v. Colvin*, No. 16-cv-9488 (LTS)(KHP), 2017 WL 5999952, at *12 (S.D.N.Y. Sept. 19, 2017), *report and recommendation adopted,* No. 16-cv-9488 (LTS)(KHP), 2017 WL 6001846 (S.D.N.Y. Dec. 4, 2017) (quoting *Calzada v. Astrue*, 753 F. Supp. 2d 250, 280 (S.D.N.Y. 2010)). "'It is the function of the [Commissioner], not [the reviewing court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.'" *Martes*, 344 F. Supp. 3d at 750 (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

Where an ALJ's evaluation of the severity of a claimant's symptoms is supported by substantial evidence in the record, that finding should be upheld. *See, e.g.*, *Reynolds v. Colvin*, 570 F. App'x 45, 49 (2d Cir. 2014) (substantial evidence supported ALJ's determination that claimant was not disabled due to neck and back pain where evidence in the record contradicted her testimony that her back pain had been constantly debilitating since 2006); *Bracken*, No. 16-cv-9488 (LTS)(KHP), 2017 WL 5999952, at *12 (ALJ properly assessed the severity of claimant's symptoms where he "contrasted Plaintiff's subjective complaints with her treatment history and evidence in the record, and properly noted that objective and clinical findings did not support the complaints and functional limitations to the extent alleged. . . ."); *Baladi*, No. 00-cv-3240 (JG), 2001 WL 527406, at *11 (ALJ appropriately determined that claimant overstated the severity of his symptoms in light of the evidence in the record, including the fact that he could "drive a car, use public transportation, lightly exercise, and attend to personal needs.").

Here, ALJ Russak compared Plaintiff's subjective complaints with her treatment history, the evidence in the record, and her testimony to conclude that the symptoms arising from her

spinal impairments were less severe than alleged. (Tr. 35-36.) At the hearing, ALJ Russak afforded Plaintiff the opportunity to answer questions concerning the factors that should be considered when evaluating the severity of a claimant's symptoms pursuant to 20 C.F.R. § 416.929 such as: her daily activities (Tr. 84, 87-88, 94-95, 100); the location, duration, frequency, and intensity of her pain (*id*. at 96-97, 101); factors that made her pain worse (*id*. at 94); the medication she takes to alleviate her symptoms and their side effects (*id*. at 90, 93, 99-100); and treatment, other than medication, she receives to manage her back pain. (*Id*. at 84-87, 90, 100-101, 104-105.) Although the ALJ found that Plaintiff suffers from some impairments in her spine, he determined that her reported symptoms were inconsistent with the record, which shows that: Plaintiff is able to do light cooking and cleaning; some shopping; socializing with friends; increased her walking in July 2015; and exhibited incongruency signs when she was evaluated for back surgery. (*Id*. 35-36; *see also, e.g., id*. at 751, 755, 1491, 1640, 1647-48.)

The evidence discussed above constitutes substantial evidence supporting the ALJ's determination that Plaintiff's pain symptoms are not as severe as alleged. In analyzing ALJ Russak's evaluation of Plaintiff's testimony regarding her symptoms, this Court lacks the discretion to reweigh the evidence he considered and is limited to determining whether he correctly applied the two-step analysis required to assess the severity of Plaintiff's symptoms. Because ALJ Russak correctly applied this test, there is no basis to disturb his determination.

### D.  The Appeals Council's Evaluation of New Evidence

Plaintiff argues that the new evidence of disability submitted to the Appeals Council should have been considered by the Commissioner. (JS 18, 44-47.) The Commissioner will

evaluate new evidence that was not considered by the ALJ where such evidence is "new," "material," and "relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 416.1470(b). Federal courts have the discretion to "order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. . . ." 42 U.S.C. § 405(g); *see also Harris-Batten v. Comm'r of Soc. Sec.*, No. 05-cv-7188 (KMK)(LMS), 2012 WL 414292, at *6 (S.D.N.Y. Feb. 9, 2012) (citing *Lisa v. Sec'y of Dep't of Health & Human Servs.,* 940 F.2d 40, 43 (2d Cir.1991)). "To be material, the evidence must be 'both relevant to the claimant's condition during the time period for which benefits were denied, and probative.'" *Harris-Batten*, No. 05-cv-7188 (KMK)(LMS) at *6 (quoting *Lisa v. Sec'y of Dep't of Health & Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991)). Materiality requires that a reasonable possibility exist that the new evidence would have caused the Commissioner to decide the claimant's application differently. *Id*. (citing *Lisa,* 940 F.2d at 43).

Courts will typically remand a social security action for additional proceedings where new evidence shows that a claimant suffered from impairments during the relevant time period that were substantially more severe than previously diagnosed. *Lisa*, 940 F.2d at 44. On the other hand, courts will not remand where the new evidence describes symptoms and conditions already contained in the record, relies on the same information previously considered by the ALJ or fails to show that the claimant's impairments were more severe than previously diagnosed during the relevant time period. *See, e.g.*, *Rodriguez ex rel. Mena v. Astrue*, No. 10-cv-0305 (PKC), 2011 WL 2923861, at *13–15 (S.D.N.Y. July 7, 2011) (declining to

remand where new evidence presented failed to show that claimant experienced additional symptoms or conditions not already described in the record); *see also Harris-Batten*, No. 05-cv-7188 (KMK)(LMS) at *6 (declining to remand on the basis of new evidence where the conclusions made in new medical reports, that plaintiff had limited use of his arm, was already incorporated in the ALJ's decision).

The Appeals Council correctly declined to consider the following documents as new evidence because they post-dated the ALJ's June 17, 2016 decision and, thus, had no bearing on whether Plaintiff was disabled during the relevant time period: receipts for Gabapentin, dated March 21, 2017 and May 9, 2017 (*id*. at 55); lower endoscopy results and pre-operative instructions for ambulatory surgery from St. Barnabas Hospital, dated June 7, 2017 and July 10, 2017 (*id*. at 57-59); records from Third Avenue Open MRI discussing an examination of Plaintiff's liver and kidneys, dated April 5, 2017 (*id*. at 61); and an MRI of Plaintiff's lumbar spine completed at Stand-Up MRI of the Bronx, P.C. on September 22, 2016.  (*Id*. at 63-64; *see also id*. at 2.)

On the other hand, the Appeals Council was incorrect in concluding that the reports prepared by Dr. Joseph DeFeo, an examining orthopedic surgeon, were not relevant to determining whether Plaintiff was disabled on or before June 17, 2016.  (*Id*. at 2.)  Although Dr. DeFeo's opinions are dated November 30, 2016 and March 16, 2017 (JS 44; Tr. 66-68, 70-74), his opinions are retrospective to April 25, 2012 and could, therefore, be relevant to evaluating the severity of Plaintiff's impairments during the relevant time period.  (Tr. 1-2, 74.); *see, e.g.*, *Mendoza v. Berryhill*, 287 F. Supp. 3d 387, 398–99 (S.D.N.Y. 2017) (a medical opinion post-dating an ALJ's decision may still be relevant if it is retrospective to the time period at issue).

Nevertheless, after reviewing Dr. DeFeo's reports, along with the entire record, it is clear that the Commissioner was not required to consider Dr. DeFeo's reports as new evidence because the information and opinions contained therein are cumulative of evidence already contained in the record.

Dr. DeFeo initially examined Plaintiff on November 30, 2016 (Tr. 66-68) and examined her again on March 16, 2017. (*Id*. at 70-74.) Both of these examinations post-date the ALJ's decision. (*Id*. at 28-37.) Dr. DeFeo reviewed Plaintiff's underlying medical records dating back to 2012 in connection with his consultative examinations. (*Id*. at 67.) He opined that Plaintiff was limited to lifting or carrying no more than five pounds, could not stand for more than two hours out of an eight-hour work day, could not sit for more than two hours out of an eight-hour work day,[22] and could not repeatedly bend, work overhead, or climb stairs. (*Id*. at 68, 72.) Dr. DeFeo concluded that Plaintiff had experienced these limitations since April 25, 2012. (*Id*. at 74.) He also determined that Plaintiff's prognosis is "fair." (*Id*. at 68.)

Dr. DeFeo's reports do not constitute new evidence because they are cumulative of evidence already in the record. Indeed, in preparing his opinions, Dr. DeFeo relied heavily on the same information in the evidentiary record considered by the ALJ, including MRIs of Plaintiff's back, which showed degenerative disc disease, disk herniation, and nerve root compression in Plaintiff's spine. (Tr. 67-68.) Moreover, Dr. DeFeo's diagnoses of spondylosis,[23]

---

[22] The Court notes that Dr. DeFeo's opinion about the length of time Plaintiff could sit differed from the opinions of Drs. Gopal and Nopal. Compare *id*. at 72, with *id*. at 776 and *id*. at 808.

[23] Spondylosis, or spinal osteoarthritis, causes compression of the spinal cord, which can cause pain in the back and neck, jerky leg movements, and may impact bladder and bowel function. *Cervical Spondylosis*, MERCK MANUALS, https://www.merckmanuals.com/home/brain,-spinal-cord,-and-nerve-disorders/spinal-cord-disorders/cervical-spondylosis (last visited Mar. 18, 2019).

myofascial syndrome,[24] and herniation of vertebrae C4-C5, C5-C6, and L5-S1 were all reflected in the medical evidence considered by the ALJ.  (*E.g., id.*, 68, 346-47, 460, 475, 490, 499, 505, 515, 831.)  Many of Dr. DeFeo's conclusions regarding Plaintiff's physical limitations were, likewise, already reflected in the evidentiary record in Dr. Gopal's and Dr. Nosal's opinions.  For example, like Dr. DeFeo, Dr. Nosal opined that Plaintiff is unable to lift or carry more than five pounds.  (*Id.* at 72, 777.)   In addition, Dr. DeFeo, Dr. Gopal, and Dr. Nopal concluded that Plaintiff should avoid pushing, pulling, kneeling, bending, and stooping.  (*Id.* at 68, 594, 780.)  Like Dr. Gopal, Dr. DeFeo also opined that Plaintiff's prognosis is "fair."  (*Id.* at 68, 588.)

Dr. DeFeo's opinions also fail to show that Plaintiff suffered from impairments during the relevant time period that were substantially more severe than previously diagnosed.  Indeed, in some respects, Dr. DeFeo's opinions are less conservative than those provided by Plaintiff's treating physicians.  For example, Dr. DeFeo opined that Plaintiff cannot stand or sit for more than two hours out of an eight-hour work day (*id.* at 72), while Dr. Gopal opined that Plaintiff cannot stand or sit for more than one hour during an eight-hour work day.  (*Id.* at 591.)  In addition, Dr. DeFeo indicated that Plaintiff does not "have significant limitations in reaching, handling or fingering," (*id.* at 73), while Dr. Gopal reached the opposite conclusion.  (*Id.* at 808.)

The cases cited by Plaintiff are inapposite.  In *Campbell v. Colvin*, No. 5:13-cv-451 (GLS) (ESH), 2015 WL 73763, *10–11 (N.D.N.Y. Jan. 6, 2015), the court held that the Commissioner improperly failed to consider new evidence showing that the claimant suffered from previously undiagnosed fibromyalgia.  Likewise, in *Mendoza v. Berryhill*, 287 F.Supp.3d 387, 398–99

---

[24]General myofascial pain syndrome causes neck and/or back pain.  *Evaluation of Neck and Back Pain*, MSD Manuals,   https://www.msdmanuals.com/professional/musculoskeletal-and-connective-tissue-disorders/neck-and-back-pain/evaluation-of-neck-and-back-pain (last visited Mar. 18, 2019).

(S.D.N.Y. 2017), the court held that the Commissioner erred by not considering a medical source's report that "found more severe restrictions than other medical opinions considered by the ALJ" because a "realistic possibility" existed that the ALJ might have reached a different outcome had he considered the new report. Unlike these cases, Dr. DeFeo's opinions fail to provide any new information that is not already reflected in the record and, in multiple instances, suggests that Plaintiff's impairments are, in fact, less severe than indicated by her treating physicians. Thus, his opinions do not constitute new, non-cumulative evidence that may have caused the Commissioner to decide Plaintiff's disability claim differently and the Commissioner did not commit reversible error by refusing to consider them.

### E. Substantial Evidence in Support of the Commissioner's Decision

Plaintiff argues that the Commissioner's decision denying her disability benefits was not supported by substantial evidence. Specifically, Plaintiff maintains that because neither Dr. Revan nor Dr. Zaman indicated that they reviewed Plaintiff's medical records prior to issuing their consultative examiner reports, as purportedly required by 20 C.F.R. § 416.917, their opinions do not constitute substantial evidence and should not have been afforded great weight. (JS 25, 37; Tr. 36.) Plaintiff also maintains that the consultative examiners' opinions should not be considered substantial evidence because they are impermissibly vague. (JS 25-26.) Additionally, Plaintiff argues that the ALJ incorrectly ascribed greater weight to the opinions of her consultative examiners than her treating physicians. (*Id*. at 26.)

Contrary to Plaintiff's argument, § 416.917 does not require that every consulting physician be provided with a claimant's medical records. *See, e.g.*, *Jordan v. Comm'r of Soc. Sec.*, No. 16-cv-9634 (KHP), 2018 WL 1388527, at *10 (S.D.N.Y. Mar. 19, 2018), *appeal*

*dismissed* (Nov. 9, 2018) (quoting *Mayor v. Colvin*, No. 15-cv-0344 (AJP), 2015 WL 9166119, at

*18 n.24 (S.D.N.Y. Dec. 17, 2015)) ("The courts in this circuit have not interpreted 'necessary

background information' to mean a claimant's medical and/or diagnostic records."); *see also*

*Marquez v. Colvin*, No. 12-cv-6819 (PKC), 2013 WL 5568718, at *13 (S.D.N.Y. Oct. 9, 2013)

("[W]here the consultative physician has directly examined plaintiff, there is no requirement

that his opinion be disregarded because of a lack of review of prior records.").  Thus, a

consultative examiner's opinion may still constitute substantial evidence even if the examiner

did not review the claimant's medical records.  *See, e.g.*, *Jordan*, No. 16-cv-9634 (KHP), 2018

WL 1388527, at *10.

The cases cited by Plaintiff are distinguishable, as they involved situations where the ALJ

either failed to consider important evidence in the record or failed to obtain evidence that was

necessary in order to determine the appropriate weight that should be given to the

consultative examiner's opinion.  *See, e.g.*, *Burgess v. Astrue*, 537 F.3d 117, 130-31 (2d Cir.

2008) (ALJ erred by relying on testimony of consultative expert who did not personally examine

the claimant *and* failed to review an essential MRI that should have been considered in

assessing claimant's ability to sit, stand, and walk); *Jackson v. Colvin*, No. 13-cv-5655 (AJN)(SN),

2014 WL 4695080, at *7 (S.D.N.Y. Sept. 3, 2014) (ALJ erred in assigning "great weight" to

consultative physician who was not provided claimant's medical records where the ALJ *also*

failed to fully develop the record and obtain an opinion from the claimant's current treating

physician).

As explained above, this Court reviewed the entire administrative record and is satisfied

that the ALJ discharged his affirmative duty to develop the record.  Moreover, the consultative

examiners' reports establish that all of the regulatory requirements of a complete consultative examination were met because, in addition to personally examining Plaintiff, both Dr. Revan and Dr. Zaman "obtained significant background information concerning Plaintiff, including Plaintiff's medical and treatment history, her reported complaints, and her reported level of functioning at the time of the examination." *Jordan*, No. 16-cv-9634 (KHP), 2018 WL 1388527, at *11; (Tr. 754-58, 1639-42.)

Plaintiff also cites to *Curry v. Apfel*, 209 F.3d 117 (2d Cir. 2000), to argue that Dr. Revan's and Dr. Zaman's opinions should not be afforded great weight because their opinions that Plaintiff suffers from "mild" to "moderate" limitations are impermissibly vague. (JS 25-26.) Yet, the circumstances in *Curry* are readily distinguishable from those in this case. In *Curry*, the court held that the consulting physician's opinion was too vague to constitute substantial evidence because it lacked any information that would have allowed the ALJ to determine whether the claimant could perform sedentary work. *Curry*, 209 F.3d at 123.

In contrast, Dr. Zaman and Dr. Revan used the terms "mild" and "moderate" to describe Plaintiff's impairments and included additional information to show how these limitations would affect Plaintiff's RFC. For example, Dr. Zaman opined that Plaintiff "has mild limitation in walking, stair climbing, pulling, pushing, heavy lifting, and carrying" (Tr. 1642), and Dr. Revan wrote that Plaintiff suffers from "[m]ild limitation with walking, laying, sitting, standing, and climbing stairs." (*Id*. at 57.) The limitations described by Dr. Revan and Dr. Zaman provide precisely the type of information the ALJ needed to rely on to determine Plaintiff's RFC. *See, e.g.*, 20 C.F.R. § 416.967(a) (providing definition of sedentary work). Additionally, courts in this district have held that a medical source's use of the terms "mild" or "moderate" to describe a

claimant's impairments does not automatically render their opinion vague as long as the opinion contains objective medical findings to support their conclusion. *See, e.g.*, *Jordan*, No. 16-cv-9634 (KHP), 2018 WL 1388527, at *9 (quoting *Dier v. Colvin*, No. 13-cv-502 (WMS), 2014 WL 2931400, at *4 (W.D.N.Y. June 27, 2014)) (The "'mere use of the phrase 'moderate limitations' does not render a doctor's opinion vague or non-substantial for purposes of the ALJ's RFC determination.'"). Thus, the opinions of Dr. Revan and Dr. Zaman are not impermissibly vague and the ALJ did not err by relying on them to assess Plaintiff's RFC and her ability to perform sedentary work.

It is well established that an ALJ may ascribe greater weight to the opinion of a consultative examiner than that of a treating physician where the consultative examiner's opinion is more consistent with the medical evidence in the record as a whole. *See, e.g.*, *Suarez v. Colvin*, 102 F. Supp. 3d 552, 577 (S.D.N.Y. 2015) (consultative examiner's opinion that claimant suffered from mild limitations relating to his mental functioning was entitled to greater weight than opinions from his treating physicians who found that he suffered from moderate to marked limitations despite noting in their records that his mental functioning was largely normal); *see also Smith v. Berryhill*, 740 F. App'x 721, 725 (2d Cir. 2018) (Commissioner did not commit reversible error by discounting the opinion of claimant's treating physician who determined that claimant suffered from severe back pain where the record showed that claimant's condition was "stable" and that he was in "no acute distress."); SSR 96-6P, 1996 WL 374180, at *3 (S.S.A. July 2, 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

If the ALJ decides to attribute less-than-controlling weight to a treating physician's opinion, he is still required to consider the following factors to determine the appropriate weight that should be afforded to the treating physician's opinion: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); *see also* 20 C.F.R. § 416.927(c) (listing the factors).

Here, ALJ Russak assigned great weight to Dr. Revan's and Dr. Zaman's opinions that Plaintiff suffered from mild physical limitations because he found them to be supported by the record as whole. (Tr. 36; *see also id*. at 757, 776, 808, 1642.) Indeed, the ALJ found that, consistent with Dr. Revan's and Zaman's opinions, the evidence in the record shows that: Plaintiff could ambulate effectively (*id*. at 31, *see also, e.g.*, *id*. at 809, 1625); increased her walking over time (*id*. at 1491); largely exhibited a "normal gait, negative straight leg raise, and normal neurological findings" (*id*. at 35); did not always use an assistive device in order to walk (*id*. at 31, 1641); exhibited incongruency signs (*id*. at 34, 36-37; *see also id*. at 1647); and experienced an alleviation of her symptoms when she took over-the-counter medication. (*Id*. at 31, 33, 35-36; *see also, e.g.*, *id*. at 99-100, 607-608.) The ALJ accorded little weight to Dr. Gopal's and Dr. Nosal's opinions that Plaintiff is significantly limited in her ability to stand and sit during the eight-hour workday because they were inconsistent with the evidence in the record cited above.

Because Dr. Revan's and Dr. Zaman's opinions were supported by the medical evidence in the record, their opinions constitute substantial evidence of Plaintiff's RFC and the ALJ did

not commit reversible error by ascribing greater weight to their opinions than those of Plaintiff's treating physicians. Additionally, because ALJ Russak considered the length and nature of the treating physicians' treating relationship with Plaintiff (Tr. 31, 34), their respective medical specialties (*id.*), and evaluated their opinions in light of the medical evidence in the record (*id*. at 36), he did not commit reversible error when he accorded their opinions little weight. *See, e.g.*, *Selian*, 708 F.3d at 418.

Substantial evidence in the record supports the ALJ's finding that Plaintiff can perform sedentary work, which would require her to: lift no more than 10 pounds at a time, would allow her to sit for the majority of the workday, and would occasionally require her to walk and stand. 20 C.F.R. § 416.967(a). Although substantial evidence in the record supports the ALJ's RFC determination that Plaintiff can perform sedentary work, he did not did not simply ignore evidence in favor of Plaintiff's claim. Indeed, he acknowledged that the two consultative examiners observed that Plaintiff exhibited an antalgic gait, inability to heel-toe walk, a reduced range of motion, a bilaterally positive straight leg raise, and reduced motor strength in her lower left leg (*id*. at 34-35) and noted that the record shows that Plaintiff's symptoms, although largely normal, occasionally became temporarily worse. (*Id*. at 34.) In light of this evidence, ALJ Russak added limitations to Plaintiff's RFC determination beyond those typically required for claimants who can perform sedentary work. These additional limitations include that Plaintiff "must be allowed to sit or stand alternatively at will, provided that she is not off-task more than 5% of the work period" and that "she is limited to jobs that can be performed with a handheld assistive device required at all times when standing." (*Id*. at 32.) In other words, he weighed the evidence before him as a whole when making his RFC determination.

The ALJ has the burden to show that sufficient jobs exist in the national economy that an individual with the claimant's RFC would be able to perform. *See* 20 C.F.R. § 416.966. The Second Circuit has held that a vocational expert's testimony may constitute substantial evidence that sufficient jobs exist in the national economy that the claimant can perform, *Galiotti v. Astrue*, 266 F. App'x 66, 68 (2d Cir. 2008), and that an ALJ can reasonably rely on a vocational expert's testimony so long as it is not undermined by evidence in the record. *E.g.*, *McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) (ALJ correctly relied on vocational expert's testimony that sufficient numbers of sedentary jobs exist that can be performed by individuals who need to frequently change from sitting to standing position).

At the hearing, ALJ Russak asked the vocational expert whether sufficient sedentary jobs exist in the national economy that an individual with Plaintiff's RFC could perform and that would allow her to, among other things: sit and stand alternatively; hold an assistive device when standing; only occasionally require her to climb ramps and stairs, but never ladders, ropes, or scaffolds; and only occasionally require her to stoop, crouch, or kneel, but never crawl. (Tr. 109-10, 117-20.) The vocational expert testified that an individual with Plaintiff's RFC could perform the following unskilled, sedentary jobs with the limitations identified by ALJ Russak: Table Worker (DOT # 739.687-182), which would require Plaintiff to inspect linoleum tiles as they pass on a conveyer belt and replace missing and substandard tiles; Document Preparer (DOT# 249.587-018), which would require assembling, cutting, photocopying or stamping documents; and Ampoule Sealer (DOT# 559.687-014), which would involve sealing ampoules filled with liquid drug products. (*Id*. at 110.) As no evidence in the record undermines the vocational expert's testimony, her assessment constitutes substantial evidence

39

that further supports ALJ Russak's decision that Plaintiff was not disabled when he issued his decision.

In reviewing the ALJ's decision, this Court does not re-weigh the evidence. *Jones v. Sullivan*, 949 F.2d 57 (2d Cir. 1991) (court may not substitute its own judgment for that of the ALJ). Even if this Court might have reached a different decision, this Court cannot disturb the Commissioner's decision if it is supported by substantial evidence.[25] *Id*. Thus, even if substantial evidence also supports a finding of disability, so long as substantial evidence supports the ALJ's decision, this Court must defer to the agency. *E.g.*, *Quinones on Behalf of Quinones v. Chater*, 117 F.3d 29, 36 (2d Cir. 1997). The Court will only remand or award benefits when the totality of the record would compel any fair-minded person to conclude the claimant cannot work. *E.g.*, *Singletary v. Secretary of Health, Ed. And Welfare*, 623 F.2d 217 (2d Cir. 1980). The record as a whole does not lead this Court to such a conclusion.

Accordingly, in light of the above, this Court finds that substantial evidence from the record supports the ALJ's decision denying Plaintiff's claim for social security disability benefits on the ground that she is capable of performing sedentary work, subject to certain limitations, and that there are a sufficient number of jobs that exist in significant numbers in the national economy that Plaintiff can perform.

---

[25] In its own review of the record, the Court notes other evidence that also supports the ALJ's conclusion, including Plaintiff's own report that she spends much of her day (i.e., more than four hours) sitting (Tr. 95) and Dr. Gopal's opinion that Plaintiff is able to "[w]alk a block at a reasonable pace," use public transportation, and climb stairs with only the use of a single hand rail. (*Id*. at 809.)

## CONCLUSION

For the foregoing reasons, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.  This Clerk of Court is respectfully directed to close this case.


**SO ORDERED.**

Dated: March 19, 2019
New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge